# UNITED STATES DISTRICT COURT

for the

_middle_ District of _North Carolina_

_Greensboro_ Division



)
)
Christopher O'Neal Patterson )
_(Plaintiff(s)_ )
_(Write the full name of each plaintiff who is filing this complaint._ )
_If the names of all the plaintiffs cannot fit in the space above,_ )
_please write "see attached" in the space and attach an additional_ )
_page with the full list of names.)_ )

Case No. ___19CV204___

_(to be filled in by the Clerk's Office)_

W.Bullard, Hendrison, Barns, Oxendine, )
Brown, Crisp, Bustillo, Hunt (A) Hunt(B) )
Bullard, state K-9 officer (John Doe) )
Leonard, Ly Windley, Faison )
_Defendant(s)_ )
_(Write the full name of each defendant who is being sued. If the_ )
_names of all the defendants cannot fit in the space above, please_ )
_write "see attached" in the space and attach an additional page_ )
_with the full list of names. Do not include addresses here.)_ )

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should _not_ contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include _only_: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name                                        Christopher O'neal Patterson
All other names by which
you have been known:
ID Number                                   0767851
Current Institution                         Polk Correctional Institution # 3980
Address                                     1001 Veazy Road
                                            Butner                    NC          27509
                                                   *City*          *State*       *Zip Code*

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1
Name                                        W. Bullard
Job or Title *(if known)*                   Assistant Superintendent
Shield Number                                     (Unknown)
Employer                                     North Carolina Department of Public Safety
Address                                      22385 McGirt Bridge Road
                                             Laurinburg             NC           28352
                                                   *City*          *State*       *Zip Code*
                                            [✓] Individual capacity    [ ] Official capacity

Defendant No. 2
Name                                        Henderson
Job or Title *(if known)*                   Captain of Security Risk Group Officer
Shield Number                                     Unknown
Employer                                     North Carolina Department of Public Safety
Address                                      22385 McGirt Bridge Road
                                             Laurinburg             NC.          28352
                                                   *City*          *State*       *Zip Code*
                                            [✓] Individual capacity    [ ] Official capacity

Defendant No. 3

Name     Barns

Job or Title *(if known)*     Tan unit Unit manager

Shield Number     unknown

Employer     North Carolina Department of Public Safety

Address     22385 McGirt Bridge Road

Laurinburg     NC     28352

    *City*        *State*        *Zip Code*

[✓] Individual capacity     [ ] Official capacity

Defendant No. 4

Name     oxendine

Job or Title *(if known)*     Subordinate officer assigned to mcru night shift.

Shield Number     unknown

Employer     North Carolina Department of Public Safety

Address     22385 McGirt Bridge Road

Laurinburg     NC     28352

    *City*        *State*        *Zip Code*

[✓] Individual capacity     [ ] Official capacity

## II.   Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.   Are you bringing suit against *(check all that apply)*:

[ ] Federal officials (a *Bivens* claim)

[✓] State or local officials (a § 1983 claim)

B.   Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

8th Amendment (excessive force, cruel and unusual punishment)
8th Amendment (Deliberate indifference) 14th Amendment (equal protection)

C.   Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

Defendant W. Bullard sanctioned the assault by guards. Defendant Henderson oversaw the beatings and could have presented the attacks but did not. Barns, Oxendine, Brown, Crop, Busillio, State K9 officer (John Doe) Leonard Bullard, Hunt (A) and Hunt (B) maliciously attacked me while in handcuffs (See complaint) Faison & Lt Windley denied medical attention as well as Henderson. Faison & Lt Windley while in segregation and Henderson right after the beating.

III. **Prisoner Status**

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐ Pretrial detainee

☐ Civilly committed detainee

☐ Immigration detainee

☑ Convicted and sentenced state prisoner

☐ Convicted and sentenced federal prisoner

☐ Other *(explain)*

IV. **Statement of Claim**

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. If the events giving rise to your claim arose outside an institution, describe where and when they arose.

B. If the events giving rise to your claim arose in an institution, describe where and when they arose.

See Complaint attached hereto

C.    What date and approximate time did the events giving rise to your claim(s) occur?

_Wednesday October 23, 2018 approximately 6:40 pm_

D.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)* What? I was assaulted by ten officers by being excessively kicked and punched in the head, face and body over two dozen times while in cuffs, which at the time, were behind my back. This was done by and through all defendants, excluding W. Buford, Hardison, Faison and Lt. Windley. I was escorted to another defendant Burns and they attempt to ram my head into shower wall/partition in receiving. Three prisoners one was released, witnessed me go into the holding cell bond by flex cuffs. Prisoner Cristine Overheard me calling for defendants to stop [redacted] to beating other prisoners known by alias only (see complaint)

V.    **Injuries**

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive. Two gashes to the back of head required seven staples to close at Scotland memorial. Abrasions to left eye swollen shut (three in size) and swollen lip (twice in size) swollen and protruding ears causing hypersensitivity to car/noise rendering sleep extremely difficult for over a week. Burning of the right eardrum and ear canal raised over a week and ear ache over two weeks. Two black eyes. Abrasions and numbness to wrist due to constriction of flex cuffs. Debilitating soreness to neck and back lasting over a week. Inability to walk next day deemed medical emergency. Abrasion to buttocks and ribcage difficulty fully opening mouth and chewing due to swollen tendon on left side of head connected to mandible. Was screened by nurse Melead and everitt the night of. Was seen by nurse rose and Robbins and doctor Locklear-Jones the next day suffered significant hardships and emotional distress. (see complaint)

VI.   **Relief**

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims. 1) A declaration that the acts and omissions described herein violated plaintiff's rights under the constitution and laws of the United States. 2) Compensatory damages in excess of 40,000 (ten thousand) against each defendant jointly and severally. 3) Punitive damages against each defendant jointly and severally in excess of 10,000 (ten thousand) 4) Plaintiffs cost in this suit. 5) Defendant's install cameras in holding cells in receiving/intake to deter future constitutive behavior which could serve to financially protect prisoners from assault by staff. 6) A jury trial on all issues triable by a jury 7) Defendants be charged and prosecuted to the fullest extent of the law and any other relief this court deems just and proper.

## VII. Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A.  Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Claim arose at scotland Correctional institution

B.  Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑ Yes

☐ No

☐ Do not know

C.  Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☑ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

Excessive force and Cruel and unusual punishment. Denial of medical care.

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☑ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☐ No

E.    If you did file a grievance:

1.   Where did you file the grievance?

Said grievance was filed upon being transferred to Polk Correctional after filing grievance regarding the intentional deprivation of property.

2.   What did you claim in your grievance?

I claimed I was assaulted by ten officers, was in cuffs, was assaulted twice, assault was sanctioned by Willard Overman by Henderson, denied medical attention and actions of defendants as well as constitution violations.

3.   What was the result, if any?

Phase 1 response alledges upper management approved no excessive force was used. Phase 2 response alledges that all officers were spoken to and have no knowledge of excessive force. Phase 3 contends that excessive force was necessary due to the assault and alledged noncompliance to orders issued by staff.

4.   What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

Phase 1 was appealed due to falsity of response as well as to exhaust administrative proceedings. Phase 2 was appealed on the same grounds and sent to phase 3 the final step to which's response was given stating: force was necessary and appropriate due to assault onstaff and alledged noncompliance to orders issued by staff.

F.   If you did not file a grievance:

1.   If there are any reasons why you did not file a grievance, state them here:

_____

2.   If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

_____

G.   Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

_____

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☑ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

I did in fact litigate a section 1983 under Christopher Oneal Patterson v. Jason Randazzo et.al. which were seven officers who shot me unarmed see: 1:11-CV-138. Summary judgement was awarded to defendants but was not based on the three strikes rule.

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☑ No

B.   If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit

Plaintiff(s) _____

Defendant(s) _____

2.   Court *(if federal court, name the district; if state court, name the county and State)*

_____

3.   Docket or index number

_____

4.   Name of Judge assigned to your case

_____

5.   Approximate date of filing lawsuit

_____

6.   Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition. _____

7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

C.   Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☐ Yes

☑ No

D.  If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.  Parties to the previous lawsuit

    Plaintiff(s)

    Defendant(s) _____

2.  Court *(if federal court, name the district; if state court, name the county and State)*

3.  Docket or index number

4.  Name of Judge assigned to your case

5.  Approximate date of filing lawsuit

6.  Is the case still pending?

    ☐ Yes

    ☐ No

    If no, give the approximate date of disposition _____

7.  What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _February 16, 2019_

Signature of Plaintiff        _Christopher O'neal Patterson_

Printed Name of Plaintiff     _Christopher O'neal Patterson_

Prison Identification #       _inmate No. 0767851_

Prison Address                _P 1001 Veazy Road_

_Butner_     _NC_     _27509_

         *City*        *State*     *Zip Code*

### B.    For Attorneys

Date of signing: _____

Signature of Attorney      _____

Printed Name of Attorney   _____

Bar Number                 _____

Name of Law Firm           _____

Address                    _____

         *City*        *State*     *Zip Code*

Telephone Number           _____

E-mail Address             _____

In the United States District Court for the
Middle District of North Carolina (Greensboro Division)

Christopher O'Neal
Patterson,
   Plaintiff/Claimant,

     V.

William Bullard, Henderson, Barns,
Oxendine, Brown, Chap, Bushiko, Hunt(A)
Hunt(B) Bullard, State K-9 officer (John Doe)
Leonard, Captain Windley, Faison
   Defendants/Respondents.

Civil Action No._____

Complaint, and Demand
for Jury Trial
[Amendment (7)]

## I. Jurisdiction and Venue

1. This is a civil action authorized by 42. U.S.C. section
1983 to redress the deprivation, under color of state law,
of rights secured by the Constitution of the United States.
This court has Jurisdiction under 28. U.S.C. Section 1331
and ▬ 1343 (a)(5). Plaintiff seeks declaratory relief
pursuant to 28 U.S.C. 2201 and 2202

2. The middle District for North Carolina is an appropriate
venue under 28 U.S.C. Section 1391 (b)(2) because it is
where the events giving rise to this claim occurred.

## II. Plaintiffs

3. Plaintiff, Christopher O'Neal Patterson, is and at all
times mentioned in this complaint, a prisoner of the state of
North Carolina in the custody of North Carolina Department
of Public Safety. He is currently confined at Polk
Correctional Institution in Butner, North Carolina.

## III. Defendants

4. Defendant, William Bullard is the Assistant Superintendent
of Scotland Correctional Institution. He is second in command,
and he is legally responsible for the operation of Scotland

Page 1 of 20

and for the welfare of all the prisoners in that facility.

5. Defendant, Henderson is a correctional officer employed by the North Carolina Department of Public Safety (N.C.D.O.P.S.) who, at all times mentioned in this complaint, held the rank of the captain over the Gang intelligence field officers and _____ was assigned to Scotland Correctional.

6. Defendant, Barns is a correctional officer employed by N.C.D.O.R.S. who, at all times mentioned in this complaint held the rank of unit manager of the tan unit and is assigned to scotland.

7. Defendant, Oxendine is a correctional officer employed by N.C.D.O.P.S. who, at all times mentioned in this complaint, held the rank of a subordinate officer assigned to the maximum control unit (mcon) on the night shift at Scotland Correctional.

8. Defendant, Brown is a correctional officer employed by N.C.D.O.P.S who, at all times mentioned in this complaint, held the rank of a subordinate officer believed to be assigned to the tan unit at scotland.

9. Defendant, Hop is a correctional officer employed by N.C.D.O.P.S. who, at all times mentioned in this complaint, held the rank of a subordinate Gang intelligence field officer and is assigned to scotland Correctional.

10. Defendant, Busillio is a correctional officer employed by N.C.D.O.P.S who, at all times mentioned in this complaint, held the rank of a subordinate Gang intelligence field officer and is assigned to scotland correctional.

11. Defendant, White(?) is a correctional officer employed by N.C.D.O.R.S. who, at all times mentioned in this complaint, held the rank of a subordinate officer assigned to the M-Con unit on the night shift at scotland Correctional.

12. Defendant, __Hunt(s)__ is a correctional officer employed by N.C.D.O.P.S. who at all times mentioned in this complaint, had the rank of a subordinate officer believed to be assigned to either the Tan Unit or Operations on the night shift at Scotland Correctional.

13. Defendant __Bullard__ is a correctional officer employed by N.C.D.O.P.S. who, at all times mentioned in this complaint, had the rank of a subordinate officer assigned to the M-Con Unit on the day shift at Scotland Correctional.

14. Defendant, __John Doe__ (State K-9 Officer) is a correctional officer employed by N.C.D.O.P.S. who at all times mentioned in this complaint had the rank of state K-9 officer assigned to Scotland Correctional.

15. Defendant, __Leonard__ is a correctional officer employed by N.C.D.O.P.S. who at all times mentioned in this complaint, had the rank of a subordinate officer believed to be assigned to either the Tan Unit or Operations at Scotland Correctional.

16. Defendant, __Medley__ is a correctional officer employed by N.C.D.O.P.S. who, at all times mentioned in this complaint, had the rank of a captain on the night shift at Scotland Correctional.

17. Defendant, __Faison__ is a correctional officer employed by N.C.D.O.P.S. who at all times mentioned in this complaint, had the rank of a subordinate officer and at that time, was assigned to the ▮▮▮▮ restrictive housing unit on the night shift at Scotland Correctional.

18. Each Defendant is sued individually, jointly and severally at all times mentioned in this complaint. Each Defendant acted under color of state law.

## IV. FACTS

19. The purpose of this complaint is to illustrate how the Defendants applied an unnecessary and excessive application of force against the plaintiff which was not applied in good faith with the intent to restore prison order; but was applied maliciously and sadistically against the plaintiff with revengeful and injurious intent to punish and cause the plaintiff physical harm.

This complaint futher seeks to illustrate how defendants acted under color of state law with a culpable state of mind with sufficient awareness that they callously disregarded and intentionally violated the plaintiff's rights under the eighth and fourteenth amendments to the United States constitution giving rise to this suit under Title 42 U.S.C. section 1983.

20. On Tuesday October 23, 2018 at scotland correctional institution, a shakedown was conducted in Delta pod on the Green Unit in attempts to recover a aluminum pan from the kitchen left behind the previous day, due to an officers negligence.

21. Two officers approached my cell door by the name of Brown who is male, and Breeden who is female.

22. A strip search was conducted by Brown. I then stepped outside of my cell. As a matter of protocol, my wrist were bound by flex cuffs and placed behind my back.

23. I stood to the left of officer Breeden while officer Brown began searching my assigned cell.

24. When officer Brown was done, officer Breeden advised him I had not been through the cell sensor? the metal detector.

25. When I came back to the cell, officer Breeden, upon his own initiative began a secondary search of my assigned cell.

26. The state K-9 officer, after briefly talking to defendant Barns made a beeline to my cell and raubenously began searching through my books/law work and Moorish literature. He asked did I have an open case. If not I'd have to send it home.

27. I explained to him there was a writ behind him that I had ready to submit to the court to get the case reopened.

28. He then — moments later — balled up all of my paperwork, including the writ and left.

29. This caused me to become indescribably furious. I slipped out of a flex cuff and threw a hammer at Brown's face with my left hand. The punch took Brown by surprise who was also holding me. He fell to the ground.

30. Officer Breeden who had her back turned quickly turned around and began punching me in the face. As the laws of cause and effect took place, I began punching her back.

31. A code seven was called over the intercom which is to indicate an officer in distress.

32. The following narrative in its descriptive and detailed form, includes information purposefully omitted from the body of the grievance. It is to assert the First Claim of relief, to explain the chain of events that took place after the code seven was called. The culpability of the defendant's which led up to the deprivation of rights satisfying the basis of this complaint.

<u>First Claim of Relief, Excessive Force, Due process</u>

33. "Get ▮▮▮ his ass" Captain Gause quickly yelled as an unknown officer blindsided me, knocking me to the floor and restraining me, just as a group of officers (defendants) swarmed by body like an angry school of piranhas that hadn't eaten in days. "move his ass" Captain Gause added.

I offered no resistance and was quickly pinned and subdued by numerous defendants. My head, torso and each leg was pressed hard into the concrete floor.

My free hand was quickly rejoined with my cuffed hand behind my back tightly bound by flex cuffs, at which time defendant barns/Tabbott punched me three (3) times in the head.

When I was peeled from the cold concrete on which I lay and trying to my feet, I could briefly see the blood and fury in defendants Barns' and shop's eyes. Just before they deliberately tried ramming my head into the shower cell partition which I deflected off my shoulder. This caused several of the witnessing prisoners to become uproarious, one of which was Peter Vallejo

For all prisoners and officers to hear, I immediately began yelling in an audibly non-aggressive tone: "I have ceased to be a threat. I am not resisting, anything hereafter is excessive force". I repeated it for all to hear as if it were a chant — effectively announcing and asserting my right to be free from excessive force by the defendants.

"Shut the fuck up" Defendant Barns stated. "You assaulted staff, nobody cares if you're not resisting". "You know what time it is" continued Barns.

"I have ceased to be a threat. I am not resisting, anything hereafter is excessive force". I continued to yell in an audibly non-aggressive tone when entering into the stairwell for all to hear in the event I was pushed down them.

I was walked so aggressively fast, all twenty steps suddenly became a ramp on which my neck collared feet could barely sustain a grip. At the bottom of the stairs best extended, stood Nurse Bullock and Sergeant Tolbert who could hear the commotion. "I have ceased to be a threat. I am not resisting, anything hereafter is excessive force" I continued. Barns who was to my right, holding my arm, again told me to shut the fuck up in a low but audible tone.

After passing Sergeant Tolbert and Nurse Bullock. I took a quick survey of the officers through my left eye unaffected by mace — I recognized all of the defendants from various parts of the institution. Captain Henderson was talking to assistant superintendent William Bullard, who I heard tell Henderson and the tightly grouped officers through his clenched teeth:

"I want his ass BEAT!"

I acted as if I heard him not. Again, I chanted: "I have ceased to be a threat. I am not resisting anything hereafter is excessive force". Adding this time "you have no right to put your hands on me"

When I entered into receiving/intake, to the left in holding cells, I immediately noticed three (3) prisoners from my cell block that were pulled out from a search earlier that day. Two are known by alias, one of which went home in January and the third is known by last name. All of whom ████ commented before I entered into the holding cell to the defendants about Jumping on me while I had cuffs on and who also overheard the first beating. (These facts are being pled with particularity as required by Rule 26(b)(1) of Fed R. Civ P.)

Before entering into the holding cell, Barns looked sinisterly smiling and said "we waited on this day for a long time"

Captain Henderson said to the officers: "Ya'll hold on. Its too many people up here. We gotta move these inmates."

With my wrist still bound and secured by the flex cuffs, instead of closing the cell door and securing me inside and removing the flex cuffs from through the wicket door, Barns shoved and then tackled me like a defensive lineman.

Falling to my knees from the force of the impact, a millisecond after hitting the ground, like bait thrown into an overstocked pond of hungry fish, Defendants Barns, Oxendine, Brown, Diop, Bustillo, Hunt (A) Hunt (B) Bullard, state K-9 officers, and Leonard viciously

attacked me. They repeatedly kicked and punched me in the face, head and body over two dozen times. During which time the defendants repeatedly shouted numerous obscenities and degrading remarks regarding my having assaulted a female officer and an old man.

My body felt as if it had sunken into a pool of pain and my head had become a ping pong ball caught between paddles made of boots and fists.

Stoopp..... Stoopp..... Stoopp.... Stoopp....! I managed to yell through the tears that began to form in the wells of my eyes — brought about by the pain, fear of dying and incurring an irreparable head injury.

Captain Henderson, who was standing at the entrance of the holding cell overseeing the beating and keeping watch said in the form of a question: Stop?.... Stop....? What....? "You should have thought about that before you committed staff." "Stop....?" She questioned again. "An old man who could care barely get around, and a female officer too? Stop? You didn't think to stop, why should we?" Who was the female officer? questioned the State K-9. "Breeder", responded Henderson. "She's new", added Hunt (B). The State K-9 officer kicked me in the left side of the head so hard it felt like the room stopped and all in it stood still. The beating continued for what felt like eternity.

A prisoner whose last name is Cheshire, who goes by Cheshire, first name, class and release date unknown, who heard me yelling stop, said aloud: "That's fucked up y'all in there jumping on that man like that, he got on handcuffs and ain't doing shit." "Man, y'all on some bullshit." The other two prisoners commented who names are unknown. These facts are being pled with particularly

Page 9 of 20

As required by Rule 26(a)(1) of Fed. R. Civ. P.

The State K-9 officer who was kicking and punching me, pulled out his retracting baton and struck me in the back three times in a stabbing like motion with its base while still retracted — splitting my head in two spots.

At the sight of blood Captain Henderson passively said "that's enough". The defendants in whole and in part still continued the attack and continued to shout vulgar obscenities regarding my hitting a woman. "I said ████████████ THAT'S ENOUGH!" Captain Henderson stated in an amplified voice but with authority.

One by one they discontinued the attack. While I lay on the floor, bound by cuffs and bleeding, gripped by fear and paralyzed by pain as if id been run over by an eighteen wheeler, the State K-9 officer side kicked my right leg at a 90° degree angle in attempts to break it as you would a stick on the curb.

After this, Barns callously sprayed me in the mouth, face and head with a 3-4 second burst of MK-9, which is a riot style mace can. He sprayed the two gashes resulting in intense burning in the wounds and burning to my right eardrum and ear canal, which lasted over a week.

This ended the first beating during which time, multiple defendants were verbally abusive, and making vulgar obscenities regarding my hitting a woman.

Second Claim for relief, Excessive force, Due process

5. All paragraphs herein are realleged.

Still bound by flex cuffs, I remained in the holding cell close to one minute. Because of the level of pain

Surging through my body, I barely had the strength to stand. Looking through the glass of the holding cell, I seen Barns off to the right waiting. He then approached the door smiling "Round two" he said glancing at Wigg who unlocked the cell door.

I offered no resistance as I was walking to the decontamination shower noticing also, the three (3) prisoners had been removed from the holding cells so as to eliminate witnesses. Just as Captain Henderson ordered. The Janitor at that time immediately went into the cell with a mop bucket and bleach pump to clean up the blood and sanitize the area. These facts are being plied with particularly as required by rule 26(A)(1) of Fed.R. Civil P.

Instead of closing the shower door and securing me in the shower and removing the cuffs through the wicket door. Wigg. Bustillo. Barns. Oxendine, Hoff(A) entered into the shower cell.

Wigg demanded that I look at him but didn't. He and Bustillo began punching me in the head and face with their right hands saying "Don't you ever hit a woman" with time in between their punches. I then felt a rapid succession of punches by the descendants in the decontamination shower.

Alright...Alright... I yelled, "stop hitting me". Captain Henderson, who again was standing at the █ entrance of the shower said. "calm down girls. lets go we got paperwork to do. Wigg hit me two more times causing my head to twice bounce of the shower wall, leaving spots of blood, from my head.

Wigg and Bustillo with time in between their punches took turns hitting me at least five(5) seconds after

Captain Henderson called a cease fire. Give me your hands Diep demanded. He removed the flex cuffs and paused to see if id respond to the assault I endured while in the flex cuffs. I did not. He and the defendants Busillo, Barns, Oxendine and Hunt(A) egressed the decontamination shower and sergeant Tolbert secured the door.

I got little to no more off in fear id be beaten or ambushed with mace in my eyes. I anxiously worked to the shower door to maintain a visual on the defendants some of which were changing bloody clothing. Captain Henderson advised the defendants to write statements.

Barns who was off to the left said. "You assaulted my staff. I cant wait until you get out".

I did not respond. I advised Captain she would not get away with this. "I've been doing this thirty (30) years. You think they'll believe you over me? Sure I will.

These beatings were in retaliation to me having assaulted staff.

<u>Third Claim for Relief Denial of medical care. Deliberate indifference.</u>

68. All paragraphs are realleged.

Captain Henderson took pictures immediately after I exited the decontamination shower after having been cuffed through the wicket door. I sat in the chair and requested medical attention through Captain Henderson while taking pictures. "You not crying now are you? (referring to my request to see medical)

I was escorted from receiving to restrictive housing

housing by Sergeant Tolbert. ~~Captain~~ Captain Windley
and others, placed in a cold cell with boxers and a
T shirt.

I advised ~~the~~ Captain Windley "I need to see
a nurse". He walked away from the cell and I still did
not see a nurse.

Shortly afterward a female officer named Faison
conducted her rounds. I could hear several prisoners
yelling I needed to be seen by a nurse that I was
bleeding and had open wounds to which she responded:
"He look fine to me, he got everything he deserved. I
know my day coming he don't need a nurse". I managed
to lift my head and tell her I in fact needed to see a
nurse. She walked off and became argumentive with
the prisoners.

For disciplinary purposes Captain Windley came
back later no more than fifteen (15) minutes) and got
the mattress with an apparent plate size blotch
of blood that ozed from my head and eye. I again
~~told~~ told him. "I need to see a nurse". He looked at
me, looked at the mattress, remained silent, an officer
radioed the control booth to secure the door. The prisoners
in the cell block were ~~also~~ also yelling for him to
get a nurse. No efforts were made.

A prisoner across from my cell wanted to talk to
me regarding the chain of events. At this point, the pain
had enough ~~time~~ to sit in to the point I became numb,
stiff, and could barely move. I advised him (who was
in cell 21). I could barely move and was about to lay
on the floor.

The prisoner encouraged the rest of them to kick
the door to petition the officer of the floor. The officers

Case 1:19-cv-00204-TDS-JLW    Document 2    Filed 02/21/19    Page 24 of 39

Came in and I heard prisoners telling them I needed
a nurse. I was directed to my cell where I lay on the
floor in a fetal position.

A Code Blue was called which is to invoke medical
attention to the location. Due to the magnitude of
disfigurement, nurse Church inquisitively said: "is that
Pat — Patterson?

I was escorted to main medical in a wheel chair
by both nurses and staff and was assessed in main
medical by nurse Everitt and McLead who documented
all visible injuries. These facts are being pled with
particularity as required by Rule 26(a)(1) Fed R.
Civ P.

Nurse Everitt called Scotland memorial Hospital
for an ambulance advising them that an "inmate"
had been beaten and needed to be evaluated.

## Injuries to Plaintiff

Due to the defendants malicious and sadistically
motivated assaultive conduct, and willful violation
of my rights carried out through said conduct
under color of state law — Plaintiff sustained
the following injuries to wit:
1. Two gashes to the back of head resulting in
seven (7) staples and permanent scarring.
2. Hematoma to left eye. swollen shut for several
days.
3. Cut to left eye corner socket.
4. Swollen head (Pumpkin head)
5. Swollen left side of face (thrice in size) lips swollen
(twice in size)
6. Swollen and protruding ears causing hypersensitivity

to cartilage rendering sleep difficult for over a week.
7. Burning to the right ear drum and ear canal which
lasted over a week and ear ache lasting more than
a week.
8. Two black eyes
9. Abrasions and numbness to wrist due to constriction
of flex cuffs
10. Debilitating soreness to back and neck still persisting
in neck.
11. Inability to walk the next day on right leg to which
a medical emergency was called.
12. Abrasions to both buttocks.
13. 2½ inch abrasion to right rib cage.
14. Difficulty opening and closing mouth due to
swollen tendon on left side of head connected to
the maxilla (upper jaw).
15. Significant hardship and emotional distress.

## II. Exhaustion of Legal Remedies

16. Plaintiff Patterson utilized the Prisoner grievance
afforded to every prisoner in the state of North
Carolina to bring the matter to upper management.
On 12/03/18 Plaintiff presented the facts relating
to this complaint. On December 19, 2018 unit manager
charles chavis gave a response contending that
an investigation was conducted and upper management
had approved that no excessive force was used. I
appealed.
On ██████ January 17, 2019 Dean Locklear sent
a response stated all staff was consulted with
the staff involved, and have no knowledge of
excessive force. I appealed.

On February 13, 2019 I received a response from the grievance resolution board who, failed and refused to acknowledge officers excessive use of force. Thus the grievance was dismissed. Patterson's grievance and appeal to all three (3) phases are attached as Exhibit A

## II. Legal Claims

82. Defendant Bollard, Drago, Bustillo, Hunt (A) Hunt (B) Oxendine, Brown and Leonard knowingly and willfully applied an unnecessary and excessive use of force against Plaintiff Patterson by repeatedly kicking and punching him in the head, face and body over two dozen times, during which time Plaintiff Patterson's wrist were bound and secured behind his back by flex cuffs. He was prone, submissive, not posing a threat, and had long ceased to be disruptive. Defendants Bollard, Drago, Bustillo, Hunt (A) Hunt (B) Oxendine & Brown actions succeeded in the violating of Plaintiff Patterson's right to Due process under the fourteenth amendment and cruel and unusual punishment and excessive force under the Eighth amendment to the United States constitution, and caused Plaintiff Patterson a great deal of pain and suffering and physical injury, significant hardships and emotional distress.

83. Defendant Burns knowingly and willfully applied an unnecessary and excessive use of force against Plaintiff Patterson by repeatedly kicking and punching him numerous times in the head, face and body and excessively macing him. During which time Plaintiff Patterson's wrist were bound and secured behind his

back by flex cuffs. He was prone, submissive, not posing a threat, and had long ceased to be disruptive. Defendant Burns' actions succeeded in the violating of Plaintiff Patterson's right to Due Process under the Fourteenth Amendment, as well as cruel and unusual punishment and excessive force under the Eighth Amendment to the United States Constitution. Defendant Burns caused Plaintiff Patterson a great deal of pain and suffering, physical injury, significant hardships and emotional distress.

84. Defendant John Doe (State K-9 officer) knowingly and willingly applied an unnecessary and excessive use of force against Plaintiff Patterson by repeatedly kicking and punching him numerous times in the head, face and body and striking him three times with a retracting baton. During which time, Plaintiff Patterson's wrist were bound and secured by flex cuffs which, at the time was behind his back. He was prone, submissive, not posing a threat and had long ceased to be disruptive. Defendant John Doe actions succeeded in violating Plaintiff Patterson's right to Due Process under the Fourteenth Amendment, as well cruel and unusual punishment ████████ and excessive force under under the Eighth Amendment to the United States Constitution. Defendant John Doe caused Plaintiff Patterson a great deal of pain and suffering, physical injuries, significant hardships and emotional distress.

85. Defendants Captain Windley and Faison knowingly and willfully denied the medical attention by blatantly ignoring multiple and repeated request by multiple Prisoners as well as those of Plaintiff Patterson. Defendant Windley and Faison was deliberately

indifferent to a serious and obvious medical need. Defendant Windley and Faison actions succeeded in violating Plaintiff Patterson's rights to Due Process under the fourteenth Amendment as well as Deliberate indifference to a serious medical need equating to cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Defendant Windley and Faison caused additional pain and suffering as well as emotional distress.

86. By witnessing the defendants illegal and unlawful actions, failing to correct that misconduct, and encouraging the continuation of that misconduct. Defendant Henderson action also succeeded in the violating of Plaintiff Patterson rights to Due Process under the fourteenth Amendment as well as cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Defendant caused Plaintiff Patterson a great deal of pain and suffering, physical injury, significant hardships and emotional distress. Defendant Henderson futher succeeded in violating Plaintiffs rights by willfully and knowingly denying Plaintiff medical attention to a serious and obvious medical need. Thereby being deliberately indifferent, equating to cruel and unusual punishment causing plaintiff additional pain and suffering and Due Process violations under the fourteenth amendment to the United States constitution.

87. Defendant William Bullard, by sanctioning the illegal and unlawful actions of the defendants, defendant William Bullard actions succeeded in violating Plaintiff Patterson's right to Due Process under the fourteenth Amendment as well as excessive force

and cruel and unusual punishment under the eighth Amendment to the United States constitution. Defendant William Bullard caused Plaintiff Patterson a great deal of pain and suffering, physical injury, significant hardship and emotional distress.

## VIII. Demand For Relief

WHEREFORE, having complained, Plaintiff Demands that this court enter Judgement granting plaintiff:

88. A declaration that the acts and omissions described herein violated plaintiff's rights under the constitution and laws of the United states.

89. Compensatory damages in excess of $10,000.00 (Ten thousand) against each defendant. Jointly and severally.

90. Punitive damages in excess of $10,000.00 (Ten thousand) Jointly and severally.

91. A Jury trial on all issues triable by a Jury present to Amendment seven to the United States constitution.

92. Plaintiff's cost in this suit.

93. Defendants be criminally charged and prosecuted to the fullest extent of the law.

94. Additional cameras be installed in holding cells in receiving to deter future assaults.

95. Any additional relief this court deems Just and proper and equitable.

Dated: February, 16, 2019
        Respectfully Submitted,

Christopher O'Neal Patterson
Warehouse No. 0767851
1001 Seazy Road
Butner, NC 27509

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Polk Correctional, in the city of Butner North Carolina on February 16, 2019

Christopher O'neal Patterson
U.C.C. 1-207/1-308; 1-103
ALL RIGHTS RESERVED, WITHOUT PREJUDICE
Christopher O'neal Patterson

Page 20 of 20

$E_{XHIBIT}$ A

$G_{RIEVANCES}$ $A_{ND}$ $R_{ESPONSES}$ ($P_{HASE}$ 1-3)
$P_{URSUANT}$ TO $T_{ITLE}$ 42 U.S.C. § 1997 (e)(a)

Roy Cooper, Governor
Erik A. Hooks, Secretary

Reuben F. Young, Chief Deputy Secretary
Kenneth E. Lassiter, Director

**DC-410 Screening Response**

**Regarding Grievance No.: 3980-2018-HCBU--09345**
**Received: 12/03/2018**

**Inmate:    PATTERSON, CHRISTOPHER O - 0767851**
**Location: 3980-POLK CI - HCBU-208**

The grievance you have submitted has been accepted and will begin a review process. A response will be sent within 15 calendar days of 12/05/2018.

12/05/2018                                      WILLIAMS, KEIRAH L.
_Date_                                          _Staff Electronic Signature_

cc: CTS

**MAILING ADDRESS:**
1001 VEAZEY RD.
BUTNER, NC 27509-1649



**OFFICE LOCATION:**
1001 VEAZEY RD.
BUTNER, NC 27509-1649
Telephone: (919)575-3070
Fax: (919)575-3090

WWW.NCDPS.GOV
*An Equal Opportunity Employer/Affirmative Action Employer*

DC–410 (Rev. 07/15)

## NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY
## PRISONS
### ADMINISTRATIVE REMEDY PROCEDURE

~~Inmate~~ Name: Christopher Oneal Patterson Bey       ~~Inmate~~ #: Warehouse No. 0767851

Location: Polk Correctional Institution #3080 HCB1 #208 Date: 11-30-18

Grievance Statement: Pursuant to Title 42 U.S.C. Section ▓▓ 1997 e(a) it is required that prisoner exhaust all administrative remedies before the filing of a federal lawsuit under Title 42 U.S.C. Section 1983, Wherefore, in order to protect certain legal claims, certain information and or detail have been purposefully omitted from within the body of this grievance, said omissions shall not be construed to deny or disparage those being sent to the court by the way of a complaint.

The purpose of this grievance is to illustrate an unnecessary and excessive application of force. The events described herein should not be construed to seek remedy for more than one incident as grounds for the rejection of a valid grievance as it is a totality of events that equates to one.

On Tuesday October 23 2018 at Scotland Correctional, I was escorted from the green unit to receiving after having assaulted two corrections officers. When I got to receiving, I was immediately thrown into a holding cell and the floor and savagely beaten by at least nine (9) different corrections while in flex cuffs, which at the time were behind my back. I was beaten twice while in receiving and the beating itself was sanctioned by assistant superintendent

What remedy would resolve your grievance?: W. Bell and overseen by S.R.G. Captain Captain Henderson. These nine (9) officers repeatedly kicked and punched me in the head, face and body over two dozen times, even after I yelled for them to stop four times. Captain Henderson who was standing at the door in brief said "You assaulted staff", the one K9 officer (John Doe) after kicking and punching me, inhaled red his retracting baton and struck me in the head with the base of it three (3) times in a stabbing like motion. I sustained two gashes (one a puncture) requiring seven(7) staples put in at Scotland memorial hosts [illegible] as I was denied immediate medical

~~Inmate~~ Signature: Christopher Oneal Patterson Bey

U.C.C. 1-308

---

### OFFICIAL USE

Date received: 12 / 7 / 18        *A. Threat*        Tan05
                          Receiving Officer Signature      Staff ID

Facility #: ____    * Year: 2018    Housing #: HCB11    Sequence #: 09345

Distribution: White - Facility Copy; Pink - Inmate Copy

DC–410 (Rev. 07/15)

## NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY
## PRISONS
## ADMINISTRATIVE REMEDY PROCEDURE

~~Inmate~~ Name: Christopher O'neal Patterson Bey     ~~Inmate~~ #: Warehouse No. 0767831

Location: Polk Correctional Institution #3980 HCBU #208 Date: 11-30-18
attention.

Grievance Statement: Captain Henderson called off the beating and one by one they began to stop. The state K-9 officer, while I lay helplessly on the floor bound by flex cuffs, his side kicked my right leg at an angle in attempts to break it.
When the beating was completely over, Tan unit unit manager Burns callously sprayed a 4-5 second burst of mk-9 (a riot style mace canister) mouth, nose (effecting the gooches) the right side of my head, face and inside my right ear.
The second beating took place after I was escorted to the decontamination shower, which took place close to a minute later. I was not acting aggressive or hostile in fear I'd be beaten again. Officer Wigg and Bustillo both of which are S.E.G. officers immediately began punching me in the face and head while making comments about the assault on officers. I then felt a rapid succession of punches from multiple officers to the head and face.
"Alright, Alright, stop" I yelled. Wigg demanded I look at him I refused. Captain Henderson who was again standing at the door said in brief "let's go guys, we got paperwork to do" the punching stopped. Wigg again demanded I look at him I yelled.

What remedy would resolve your grievance?: He punched me two more times causing my head to twice bounce off the shower wall. Wigg and Bustillo with time in between their punches took turns punching me at least five seconds after captain Henderson demanded a cease fire. Wigg said give me "his hands" he then took the flex cuffs off left the shower wall and sergeant Tolbert secured the door. Captain Henderson demanded that everyone write statements which were most likely falsified to attempt to justify the beating to which there can be none.

~~Inmate~~ Signature: Christopher O'neal Patterson Bey

U.C.C. 1-308

---

**OFFICIAL USE**

Date received: 1-1-18

A. Threat
Receiving Officer Signature

Tan05
Staff ID

Facility #: 3980    Year: 2018    Housing #: 11-13-16    Sequence #: 09-415

Distribution: White - Facility Copy; Pink - Inmate Copy

## NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY
## PRISONS
## ADMINISTRATIVE REMEDY PROCEDURE

Inmate Name: Christopher Oneal Patterson Bey    Inmate #: Warehouse# 0767651

Location: Polk Correctional Institution 3980 HCBU    Date: 11-30-18

Grievance Statement: The officers involved in the first beating was: Tan Unit Unit manager Barns, S&G, Officers Ursa and Bushlong Oxendine who works m-con night shift, Brown who works day shift tan unit, Hunt, who works m-con night shift, Hunt who works night shift operations (and head with glasses) Bullard who works m-con day shift, Leonard who works day shift Abraham Unknown and the White K-9 officer (John Doe)

The officers involved in the second beating was Ursa, Bushlong, Barns, Hunt (m-con Oxendine (that works m-con).

These hits were sanctioned by assistant superintendent M. Bullard overseen by Captain Henderson who could have prevented but failed to prevent this assault. This the amount of force used, was unnecessary, was not applied in good faith with the intent to restore prison order, Rather was applied maliciously & Sadistically with the intent to cause harm, the unnecessary wanton infliction of pain and carried out the acts of assault and battery with a culpable state of mind thereby violating my 8th Amendment to the U.S. Constitution. Freedom of cruel and unusual punishment And excessive force.

I sustained as a result of the beating; left eye swollen Shut (Hemphoma); Two gashes to the back of head; cut to left ear; swollen head; swollen left side of face and lips swollen and protruding ears; Two Black eyes; numerous abrasions about the body; complications to maxilla upper jaw due to swollen tendon on left side of head.

What remedy would resolve your grievance?: To my knowledge NCDPS provides no remedy to redress this especial wrongdoing. Officers should be relieved of their duties pendeding an investigation of the allegations

Inmate Signature: Christopher O'neal Patterson Bey
U.C.C. 1-308

---

### OFFICIAL USE

Date received: 12/3/18

A. Threat
Receiving Officer Signature

Tan05
Staff ID

Facility #: 3980    Year: 2018    Housing #: HCBU    Sequence #: 09345

Distribution: White - Facility Copy; Pink - Inmate Copy

Roy Cooper, Governor
Erik A. Hooks, Secretary

Reuben F. Young, Chief Deputy Secretary
Kenneth E. Lassiter, Director

## Step One - Unit Response

**Regarding Grievance No.: 3980-2018-HCBU--09345**
**Received: 12/03/2018**

**Inmate:    PATTERSON, CHRISTOPHER O - 0767851**
**Location:  3980-POLK CI - HCBU-208**

In response to grievance #09345 written by offender Christopher Patterson #0767851 pertaining to your statement of an alleged excessive use-of-force. An investigation was conducted on these allegations and upper management has approved that no excessive force was used. Incident report #0797 has been completed. This incident has been completed and no further actions is required.

| 12/19/2018 | CHAVIS,CHARLES A. |
|---|---|
| *Date* | *Staff Electronic Signature* |

(A)_____ Agree with grievance response      (B)_____ Appeal to Step Two (24-hour limit)

| | |
|---|---|
| *Date* | *Inmate Signature* |

| | |
|---|---|
| *Date* | *Witness Signature (optional)* |

cc: CTS



**MAILING ADDRESS:**
1001 VEAZEY RD.
BUTNER, NC 27509-1649

**OFFICE LOCATION:**
1001 VEAZEY RD.
BUTNER, NC 27509-1649
Telephone: (919)575-3070
Fax: (919)575-3090

WWW.NCDPS.GOV
*An Equal Opportunity Employer/Affirmative Action Employer*

Roy Cooper, Governor
Erik A. Hooks, Secretary

Reuben F. Young, Chief Deputy Secretary
Kenneth E. Lassiter, Director

## Step Two - Area/Complex/Institution Response

**Regarding Grievance No.: 3980-2018-HCBU--09345**
**Received: 12/03/2018**

**Inmate:** PATTERSON, CHRISTOPHER O - 0767851
**Location:** 3980-POLK CI - HCBU-208

Inmate Christopher Patterson #0767851 I have investigate you grievance and all staff stated they have no knowledge of excessive force no further action is recommended.

01/17/2019          LOCKLEAR, DEAN
_____      _____
*Date*                  *Staff Electronic Signature*

(A)_____ Agree with grievance response     (B)__✓__ Appeal to Secretary, DPS (24-hour limit)

_____      _____
*Date*                  *Inmate Signature*

_____      _____
*Date*                  *Witness Signature(optional)*

cc: CTS

**MAILING ADDRESS:**
1001 VEAZEY RD.
BUTNER, NC 27509-1649



**OFFICE LOCATION:**
1001 VEAZEY RD.
BUTNER, NC 27509-1649
Telephone: (919)575-3070
Fax: (919)575-3090

WWW.NCDPS.GOV
*An Equal Opportunity Employer/Affirmative Action Employer*

Case 1:19-cv-00204-TDS-JLW    Document 2    Filed 02/21/19    Page 38 of 39

State of North Carolina
Roy Cooper
Governor

Kimberly D. Grande
Executive Director

Members
Robert E. Campbell, Esq.
Jonathan D. Franklin
H. Gerald Beaver, Esq.
David W. Addison, Esq.
Phyllis S. Leary

## Step Three - Administrative Remedy Response

| | | | |
|---|---|---|---|
| **Inmate:** | **PATTERSON,CHRISTOPHER O** | **Tracking No:** | **0000353840** |
| **Inmate #:** | **0767851** | **Unit Grievance No:** | **3980-2018-HCBU--09345** |
| **Location:** | **3980-POLK CI - HCBU-208** | **Date Received:** | **01/18/2019** |
| | **Courier # 17-11-14** | | |

## Grievance Examiner: Findings and Disposition Order

This examiner has carefully reviewed the grievance and the response given by staff in the DC-410A response. A review of the matter finds that your allegations regarding excessive force have been investigated by the facility. The administration has determined that the force used was appropriate due to your assault against staff members and your noncompliance with orders issues by staff. It is the expectation by DPS that all staff conducts themselves in a professional manner when dealing with the offender population. All DPS staff has been reminded of this expectation, and failure to adhere to this expectation will result in immediate corrective action. From this review, it appears the facility has taken the appropriate action in regards to your in appreciate behavior. Therefore base on a review of the all reports and statements regarding this matter. This matter was adequately addressed, and there is a lack of evidence to support that excessive force was used in regards to your unwillingness to comply with orders issued by staff. Accordingly this grievance is dismissed and no further action is warranted.

02/08/2019

*Date*

ALSTON, PATRICIA A.

*Inmate Grievance Examiner Electronic Signature*

cc: CTS