# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHRISTOPHER O'NEAL PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV204 |
| | ) | |
| CAPTAIN HENDERSON, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER, MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court upon a motion for summary judgment by Plaintiff Christopher O'Neal Patterson. (Docket Entry 36.) Also before the Court is Plaintiff's motion to amend the Complaint. (Docket Entry 41.) Defendants have failed to respond to either motion. These matters are ripe for disposition. For the following reasons, the Court will grant Plaintiff's motion to amend the Complaint correcting the identities of several defendants, and recommend that Plaintiff's motion for summary judgment be denied.

### I. BACKGROUND

Plaintiff, a pro se prisoner, filed the instant Complaint alleging constitutional violations by Defendants stemming from an incident that occurred while Plaintiff was housed at Scotland Correctional Institution ("Scotland") in Laurinburg, North Carolina. (*See generally* Complaint, Docket Entry 2.) Plaintiff names several prison administration officials and multiple correctional officers as Defendants in this action. (*See id.* at 4, 12-14.)[1] The facts in the

---

[1] All citations in this recommendation to documents filed with the Court refer to the page

Complaint are alleged as follows:

On Tuesday October 23, 2018, officials were conducting "shakedown" procedures in the Delta Pod of the Green Unit at Scotland in an attempt to recover an aluminum pan belonging to the prison's kitchen. (*Id.* at 15.) Officers Brown and Breeden approached Plaintiff's cell, at which time he was immediately subject to a strip search, and thereafter he stood to the left of Officer Breeden outside the cell in flex cuffs while Officer Brown conducted the cell search. (*Id.*) Once Officer Brown completed an initial cell search, Officer Breeden advised that Plaintiff had not been through the metal detector. (*Id.* at 16.)

When Plaintiff subsequently returned to his cell, Officer Breeden initiated a second cell search. (*Id.*) Plaintiff alleges that at such time, a State K-9 Officer arrived at his cell and begin sifting through his material. (*Id.*) Plaintiff was informed that he would have to send his books and legal material home if he did not have an active case pending. (*Id.*) Plaintiff then explained his plans to reopen a matter using some of the legal material, however the officer "bagged up" Plaintiff's legal documents and paperwork and exited the cell. (*Id.*)

Upon the confiscation of his legal materials, Plaintiff became "indescribably furious," slipped out of the flex cuffs, and punched Officer Brown in the face causing him to fall to the ground. (*Id.*) Officer Breeden then reacted, punching Plaintiff in the face, and Plaintiff begin punching back. (*Id.*) An emergency alert signaled over the prison intercom and Plaintiff was knocked to the floor and subdued by multiple officers. (*Id.* at 17.) During this time while on the floor, Plaintiff alleges that Captain Gause ordered officers to mace Plaintiff, whose hands were being cuffed behind his back without resistance. (*Id.*) Plaintiff also alleges that Unit

---

numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

Manager Barns punched him three times in the head before Plaintiff was brought back up to his feet, after which Unit Manager Barns and Officer Paul Vigo[2] attempted to slam Plaintiff's head into the shower wall partition. (*Id.*)

Plaintiff then claims that he announced his intention to no longer be considered a threat "[f]or all prisoners and officers to hear," and that he stopped resisting. (*Id.* at 18.) While being escorted away "aggressively" from the scene and down the stairway, Plaintiff continued to announce his non-resistance despite Unit Manager Barns' profanities. (*Id.*) During this walk past several officials, Plaintiff heard Assistant Superintendent William Bullard tell Captain Karen Henderson[3] and other officers, "I want his ass beat." (*Id.* at 18-19.) Plaintiff ignored the comment and continued to announce his non-resistance to officers. (*Id.* at 19.)

Plaintiff then proceeded to the prison's receiving area where he heard other inmates conversing about the earlier altercation which they also witnessed. (*Id.*) Plaintiff alleges that Captain Henderson stated that the other inmates needed to be removed from the area, after which Plaintiff, still cuffed, was then shoved and tackled inside the holding cell by Unit Manager Barns, then "viciously attacked" by Unit Manager Barns, Officers Oxendine, Brown, Vigo, Nickolas Bustillos, Hunt (A), Hunt (B), Bullard,[4] Leonard, and the State K-9 Officer.[5] (*Id.* at 19-20.) Plaintiff claims that he was punched and kicked "over two dozen times," while

---

[2] Defendant Vigo notes his correct name in his Answer. (*See* Docket Entry 8 (Paul Vigo).)

[3] Defendant Henderson notes her correct name in her Answer. (*See* Docket Entry 8 (Karen Henderson).)

[4] Defendant Bullard involved in the attack is a correctional officer and does not appear to be the same individual named as Defendant William Bullard, Assistant Superintendent at Scotland.

[5] Defendant Bustillos notes his correct name in his Answer. (*See* Docket Entry 8 (Nickolas Bustillos).)

3

officers made derogatory statements at him. (*Id.* at 20.) Plaintiff was also struck in the back of the head by the State K-9 Officer who used his retractable baton, which caused Plaintiff's head to split in two spots. (*Id.* at 21.) Captain Henderson instructed the officers to stop attacking Plaintiff and they subsequently complied "one by one." (*Id.*) Plaintiff further alleges that while he laid on the floor in cuffs and bleeding, the State K-9 Officer kicked Plaintiff's leg "in attempts to break it." (*Id.*) Unit Manager Barns then sprayed Plaintiff in the face and mouth with mace causing severe burning. (*Id.*)

Plaintiff then alleges that he was taken to the decontamination shower area where he again was assaulted with punches by Officers Vigo, Bustillos, Barns, Oxendine, and Hunt (A) until instructed to cease by Captain Henderson. (*Id.* at 22.) Even after Captain Henderson's command, Plaintiff was struck again by Officers Vigo and Bustillos. (*Id.* at 22-23.) Officer Vigo then removed the flex cuffs from Plaintiff. (*Id.* at 23.) Plaintiff states that he removed very little of the mace spray from his person in the decontamination shower fearing further assault. (*Id.*) Plaintiff alleges that the assaults by Defendants were in retaliation of his initial assault on prison staff. (*Id.*)

The Complaint further alleges that Plaintiff requested medical attention after the assaults, which was initially denied by Officers Affie Faison[6] and Windley. (*Id.* at 23-24.) Eventually other prisoners were able to alert an officer who called a nurse to the cell and Plaintiff was escorted to the main medical station. (*Id.* at 24-25.) Plaintiff was evaluated by Nurses Everitt and McLeod, who documented Plaintiff's injuries and called Scotland

---

[6] Defendant Faison notes her correct name in her Answer. (*See* Docket Entry 19 (Affie Faison).)

4

Memorial Hospital to request an ambulance. (*Id.* at 25.) Plaintiff details that due to the events described, his injuries included: (1) two gashes on his head requiring seven staples; (2) a swollen and cut left eye; (3) swelling in his head, left side of his face, lips, and ears; (4) burning in his ear drum lasting over a week; (5) two black eyes; (6) soreness to back and neck; (7) inability to walk on his right leg the following day after the incident; (8) abrasions to both buttocks and right rib cage; (9) difficulty opening his mouth due to jaw swelling; (10) and significant emotional distress. (*Id.* at 25-26.)

Plaintiff alleges that he utilized the prison grievance system by filing a grievance on December 3, 2018. (*Id.* at 26, 34-36.) On December 19, 2018, following an investigation, prison officials concluded that no excessive force was used, to which Plaintiff appealed. (*Id.* at 26, 37.) On January 17, 2019, prison officials responded, stating no excessive force was found. (*Id.* at 26, 38.) Plaintiff again appealed, and on February 13, 2019, received a response from the grievance resolution board dismissing the grievance. (*Id.* at 27, 39.)

Plaintiff claims that Defendants Bullard, Vigo, Bustillos, Hunt (A), Hunt (B), Oxendine, Brown, and Leonard knowingly and willfully applied unnecessary use of force by repeatedly punching and kicking him in the head, face, and body while Plaintiff's wrists were bound and secured with flex cuffs. (*Id.* at 27.) Additionally, Plaintiff claims that Defendant Barns used excessive force by kicking, punching, and deploring mace spray while Plaintiff was restrained. (*Id.*) Plaintiff alleges that the State K-9 Officer (identified as Defendant John Doe) used excessive force by repeatedly kicking and punching Plaintiff as well as striking him with his retractable baton while Plaintiff was restrained. (*Id.* at 28.)

Plaintiff also claims that Defendants Windley and Faison acted with deliberate

indifference by denying Plaintiff medical attention. (*Id.* at 28-29.) In regard to Captain Henderson, Plaintiff claims that his rights were violated by Defendant's failure to correct misconduct that was observed during the assaults as well as denying Plaintiff medical attention. (*Id.* at 29.) Finally, Plaintiff alleges that Defendant William Bullard, an administration official, sanctioned the unlawful actions of the co-Defendants, and in doing so violated Plaintiff's constitutional rights. (*Id.* at 29-30.) Plaintiff alleges that these actions are in violation of his due process rights under the Fourteenth Amendment as well as his rights under the Eighth Amendment. (*Id.*)

Plaintiff filed this action on February 21, 2019, seeking a declaration that the acts described in this Complaint violated his constitutional rights, as well as compensatory and punitive damages "in excess of $10,000.00 . . . against each defendant, jointly and severally." (*Id.* at 30.) Plaintiff additionally asks that "additional cameras be installed in holding cells in receiving to deter future assaults," and "Defendants to be criminally charged and prosecuted."[7] (*Id.*)

After summonses were issued in this matter, several Defendants filed answers. (*See* Docket Entries 8, 19.)[8] Discovery commenced, and shortly before filing his summary judgment motion, Plaintiff filed a notice with the Court indicating that Defendants failed to

---

[7] Plaintiff should note that as a private citizen, he has no constitutional right, nor any judicially cognizable interest, to institute criminal proceedings against another person. *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990) (citing *Linda R. v. Richard V.*, 410 U.S. 614, 619 (1973)). Indeed, "the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

[8] However, multiple Defendants remain unserved at this time. (*See* Docket Entries 18, 20, 23, 24.) Plaintiff was forewarned that unserved Defendants may be dismissed from this action. (*See* Docket Entry 26.)

comply with the Court's order compelling production of certain discovery requests. (*See* Docket Entry 35; *see also* Text Order dated 8/19/2020.) Plaintiff submitted the pending motion for summary judgment on October 26, 2020. (Docket Entry 36.) In support of his motion, Plaintiff submitted a declaration on his own behalf along with a photo of himself he retrieved from the North Carolina Department of Public Safety's website depicting some of his alleged injuries, and requests for admissions which Plaintiff contends should be deemed admitted for Defendants' failure to respond. (*See* Docket Entries 37, 37-1, 37-2.)

On March 17, 2021, the Court construed Plaintiff's notice of Defendants' non-compliance as a motion for sanctions pursuant to Civil Procedure Rule 37(b) and ordered Defendants to file a response. (*See* Text Order dated 3/17/2021.) Counsel for Defendants thereafter responded and represented to the Court that Defendants had complied with the Court's previous order and would provide Plaintiff with another copy of the discovery responses. (Docket Entry 40.) In light of counsel's representations to the Court, Plaintiff's motion for sanctions was denied; however, Plaintiff was given an opportunity to supplement his summary judgment brief in light of the additional material he could now review. (*See* Text Order dated 3/24/2021.) Plaintiff failed to file a timely supplemental brief but submitted a motion to amend the Complaint to correct some of Defendants' names. (*See* Docket Entry 41.) Defendants have not filed a response to the motion to amend nor the motion for summary judgment.[9]

---

[9] Per the local rules, an unopposed summary judgment motion should "be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." L.R. Civ. P. 7.3(k). However, "the Fourth Circuit still requires that unopposed motions to dismiss and unopposed motions for summary judgment be reviewed to determine if dismissal is proper." *Jones v. SSC Durham Operating Co., LLC*, No. 1:17CV686, 2019 WL 290036, at *2 (M.D.N.C. Jan. 22, 2019)

7

## II. DISCUSSION

### Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment as to all claims against Defendants Henderson, William Bullard, Vigo, Bustillos and Faison. (Docket Entry 36.) Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere

---

(unpublished) (citing *See Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416 n.3 (4th Cir. 2014)).

allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Anderson,* 477 U.S. at 248-49. Here, Plaintiff is a *pro se* litigant; thus, his pleadings are to be liberally construed. *Graham v. Geneva Enters., Inc.*, 55 F. App'x 135, 136 (4th Cir. 2003).

### A. Excessive Force

Plaintiff alleges that Defendants Vigo and Butsillo violated his constitutional rights through the use of excessive force. (*See* Compl. at 27.) Claims of excessive force in attempts to subdue a convicted prisoner are governed by the Eighth Amendment's prohibition of cruel and unusual punishment.[10] *Graham v. Connor*, 490 U.S. 386, 394 (1989). "The Eighth Amendment protects prisoners from unnecessary and wanton infliction of pain." *Thompson v. Commonwealth of Va.*, 878 F.3d 89, 97 (4th Cir. 2017) (internal quotations omitted). Prison officials have an "affirmative obligation to take reasonable measures to guarantee [inmate's] safety." *Id.* (internal quotations omitted). Accordingly, when evaluating an excessive force claim, the Court "must determine 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Id.* at 98 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). To make this determination, the Court considers two elements: "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation

---

[10] While the Complaint asserts claims under both the Eighth and Fourteenth Amendments, Plaintiff's constitutional rights stemming from the incident and alleged conduct of the answering Defendants sound solely in Eighth Amendment protections. Indeed, Plaintiff was a convicted prisoner at the time of the alleged incident. (*See* Compl. at 4.)

9

suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).

The objective component

> focuses not on the severity of any injuries inflicted, but rather on "the nature of the force," which must be "nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (citing *Hudson* [503 U.S. at 7]); *cf. Wilkins*, 559 U.S. at 37 (explaining that the extent of injury suffered may indirectly "provide some indication of the amount of force applied"). Not every "malevolent touch by a prison guard" is necessarily a constitutional violation. *Hudson*, 503 U.S. at 9. The Eighth Amendment "excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 10 [internal quotation and citation omitted].

*Garris v. Gober*, No. 1:10-CV-504, 2013 WL 4502261, at *1 (M.D.N.C. Aug. 22, 2013), *aff'd*, 554 F. App'x 211 (4th Cir. 2014). In other words, "there is no 'significant injury' threshold to sustain an excessive force claim because a de minimis injury, if the product of malicious and sadistic use of force, can sustain the claim." *Parker v. Stevenson*, 625 F. App'x 196, 198 (4th Cir. 2015) (quoting *Wilkins*, 559 U.S. at 37-38).

As for the subjective component, "[t]he state of mind required in excessive force claims is "wantonness in the infliction of pain.'" *Iko*, 535 at 239 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). The Supreme Court has set forth a list of non-exclusive factors to assist courts in determining whether an officer has acted with wantonness: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Id.* (citing *Whitley*, 475 U.S. at 321) (internal quotations omitted). "From such

10

considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.

Here, Plaintiff has not met his initial burden of coming forward and demonstrating the absence of a genuine issue of material fact regarding the use of excessive force by Defendants Vigo and Bustillos during the holding cell or shower assaults. At the outset, the Court notes that Plaintiff had an opportunity to supplement his summary judgment brief after review of the discovery material but failed to do so. Additionally, while Plaintiff seeks to have the requests for admissions deemed admitted, doing so would not satisfy Plaintiff's burden in this matter. Generally, "[a]dmissions obtained under Rule 36, including matters deemed to be admitted by a party's failure to respond to a request for admissions, can form the basis for granting [s]ummary [j]udgment." *Gardner v. Borden, Inc.,* 110 F.R.D. 696, 697 (S.D.W.Va. 1986) (internal quotations and citation omitted). However here, Plaintiff's requests for admission shed no further light on the issue of excessive force surrounding the holding cell or shower assaults. For example, even if it is deemed true that Plaintiff was cuffed while entering both the holding cell and showering area, and that there were multiple officers present at such time (*see* Docket Entry 37-2 at 2-3, 5), such facts do little to demonstrate an absence of a genuine issue as to whether Defendants acted with a sufficiently culpable state of mind and whether the deprivation suffered or injury inflicted upon Plaintiff was sufficiently serious. *Iko*, 535 F.3d at 238.

11

Beyond that, Plaintiff has submitted a photo of himself depicting some of his alleged injuries and an uncorroborated self-declaration, which is mostly a recitation of the allegations in the Complaint and otherwise lacks evidentiary support. (Docket Entries 37, 37-1.) This is particularly noteworthy in light of Plaintiff's references in the declaration to apparent "incident reports" surrounding the allegations (*see* Docket Entry 37 at 2), which he did not file with his motion, nor did he file any additional evidentiary support despite having an opportunity to do so. Ultimately, Plaintiff's submissions in support of his motion for summary judgment are insufficient to meet his burden at this juncture. His motion for summary judgment on the issue of excessive force should therefore be denied.

### B. <u>Deliberate Indifference</u>

Plaintiff also moves for summary judgment on his claim for deliberate indifference against Defendant Faison. It is well settled that not "every claim by a prisoner that he has not received adequate medical treatment states a [constitutional] violation." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The Eighth Amendment only proscribes acts or omissions by prison officials that are "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

In the prison context, "a serious medical need exists if (1) a condition has been diagnosed by a physician as mandating treatment or is so obvious that a layperson would recognize the need for medical care; or if (2) a delay in treatment causes a lifelong handicap or permanent loss." *Simmons v. Surry Cty. Sherriff's Dep't*, No. 1:09CV94, 2010 WL 1418319, at *3 (M.D.N.C. Apr. 2, 2010) (unpublished) (citing *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) and *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978)); *see*

12

*also Iko*, 535 F.3d at 241. In order to prove deliberate indifference, a plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference is a subjective standard, focusing on the defendant's conscious disregard of a substantial risk of harm. *Farmer*, 511 U.S. at 837-38; *see also Parish v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004). Additionally, the individual defendant must realize his actions were inappropriate as a result of his actual knowledge of risk to the inmate. *Parish*, 372 F.3d at 303. This standard is more than mere negligence, requiring actual knowledge of the individual defendant's own recklessness. *Farmer*, 511 U.S. at 836.

Here, Plaintiff again fails to meet his burden of demonstrating an absence of a genuine issue of material fact as to Defendant Faison's alleged deliberate indifference conduct. Plaintiff has not submitted any medical evidence regarding his injuries, nor any evidence suggesting that Defendant Faison consciously disregarded a substantial risk of harm created by those injuries. His motion should thus be denied for the same reasons articulated above regarding his excessive force claims.

### C. Supervisory Defendants

Plaintiff's also asserts claims against Defendants Henderson and William Bullard in their supervisory capacities. (*See* Compl. at 29 (Defendant Henderson failing to correct and/or encouraging misconduct of subordinates; Defendant William Bullard sanctioning conduct of other Defendants).) Defendants in supervisory roles may not be held liable based upon a theory of *respondeat superior*, because *respondeat superior* generally is inapplicable to § 1983

13

suits. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). However, a supervisor may be liable for the actions of a subordinate if:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and
>
> (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Additionally, "[a]plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses[,]" however, a "plaintiff assumes a heavy burden of proof" on this issue because "a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities." *See id.* (internal citation and quotations omitted).

Here, Plaintiff also fails to meet his burden on this issue. He has presented no evidence demonstrating Defendants Henderson and William Bullard's knowledge and response to their subordinate's conduct. More importantly, Plaintiff has not demonstrated the absence of a genuine issue of material fact regarding Defendants' "inaction in the face of documented widespread abuses." *See id.* As such, summary judgment should also be denied on this issue.

## Plaintiff's Motion to Amend/Correct Names

Plaintiff also seeks to amend his Complaint apparently to correct the names of several

defendants and to reveal the identity of the John Doe Defendant. (*See* Docket Entry 41.)[11] Pursuant to Federal Rule of Civil Procedure Rule 15(a), leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "In recognition of this liberal standard, courts freely permit amendments to cure such pleading deficiencies as the improper naming of defendants." *Silver v. Bayer HealthCare Pharms., Inc.*, No. CV 2:19-3495-DCN-MHC, 2020 WL 9397556, at *3 (D.S.C. Sept. 29, 2020) (unpublished); *see also Campos v. Moultrie*, No. CV JKB-15-2800, 2016 WL 4240089, at *15 (D. Md. Aug. 11, 2016) (unpublished) (granting motion to amend to correct names of defendants); *Rocha v. Gilbert*, No. 7:12-CV-2-D, 2012 WL 13189900, at *1 (E.D.N.C. June 20, 2012) (unpublished) (same).

The undersigned first notes that the motion only notes the first names of individuals listed as Defendants but does not identify the state K-9 "John Doe" Defendant. (*See id.* (identifying first names of Defendants Unit Manager Barns, Officer Oxendine, C/O Hunt (A), and C/O Hunt (B)).) To the extent the motion to amend seeks to identify those specific Defendants by their full names, the motion will be granted, and the Clerk will be ordered to reflect that Defendant Unit Manager Barns is "Daniel Barnes," Defendant Oxendine is "Christopher Oxendine," Defendant Hunt (A) is Daniel Hunt, and Defendant Hunt (B) is "Mitchell Hunt."

---

[11] Attached to the motion is also a "Notice" which Plaintiff reiterates that he filed his summary judgment motion despite Defendants' failure to comply with discovery. (*See* Docket Entry 41 at 3.) Plaintiff further states that Defendants made "unsubstantiated allegations" that discovery documents were produced and now seek to produce them one year after the close of discovery. (*Id.*) Plaintiff essentially takes issue with Defendants' response to Plaintiff's earlier motion which counsel represented to the Court that discovery material had been provided in September 2020 and would again be mailed to Plaintiff. (*See* Docket Entry 40.) This issue is now moot by entry of the Court's March 24, 2021 Text Order which included allowing Plaintiff an opportunity to supplement his summary judgment brief after having reviewed the discovery material. (*See* Text Order dated 3/24/2021.)

## III. CONCLUSION

For the reasons stated herein,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Amend Complaint (Docket Entry 41) is **GRANTED** insofar as the Clerk shall reflect the Court's docket such that Defendants Unit Manager Barns, Officer Oxendine, C/O Hunt (A), and C/O Hunt (B) are identified as Daniel Barnes, Christopher Oxendine, Daniel Hunt and Mitchell Hunt as noted above.[12]

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Docket Entry 36) be **DENIED**.

_____
Joe L. Webster
United States Magistrate Judge

July 20, 2021
Durham, North Carolina

---

[12] This does not alter the service status of said Defendants.