IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHRISTOPHER O'NEAL PATTERSON,  )
                               )
          Plaintiff,           )
                               )
     v.                        )     1:19-CV-204
                               )
CAPTAIN HENDERSON, et al.,     )
                               )
          Defendant.           )

### MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

On January 20, 2023, after a four-day trial, a jury rendered a verdict in this case, finding Defendants Karen Henderson, William Bullard, Nickolas Bustillos, and Paul Vigo not liable for violating Plaintiff Christopher Patterson's civil rights during a series of alleged altercations on October 23, 2018, at the Scotland Correctional Institution ("Scotland Correctional"). (Doc. 131.) Before the court is Patterson's renewed motion for entry of judgment as a matter of law against one of those Defendants, Vigo, pursuant to Federal Rules of Civil Procedure 50(b) and 55. (Docs. 134, 135.) Patterson argues that, notwithstanding the jury's verdict, judgment as a matter of law is warranted because Vigo "failed to plead or otherwise defend" the action. (Doc. 135 at 6.) Neither Vigo nor his counsel from the North Carolina Attorney General's office, who represented Vigo at trial, filed a response to the motion. For the reasons set forth below, Patterson's motion

will be denied.

**I.   BACKGROUND**

Because Patterson's motion relies on Vigo's pretrial as well as trial activity, the court recounts the history of this case as against Vigo.

Patterson filed this civil action on February 21, 2019, claiming excessive force and deliberate indifference arising out of alleged altercations on October 23, 2018, at Scotland Correctional, a North Carolina Department of Corrections facility, where he was incarcerated.[1] (Doc. 2.) The complaint named several prison administration officials and multiple correctional officers, including Vigo, as Defendants. (Id.) Because Vigo was acting within the scope of his employment at the time of the incident (as were all Defendants), the North Carolina Attorney General elected to represent him, upon Vigo's request, under the Defense of State Employees Act, N.C. Gen. Stat. § 143-300.3.1.[2] (Doc. 91 ¶ 3; Doc. 91-2.) Soon thereafter, North Carolina Assistant Attorney General Corrine Lusic appeared on behalf of the Defendants who had been properly served - including Vigo - and

---

[1] Patterson was completing his state sentence before beginning his 744-month sentence related to several violent robberies. (Case No. 1:09-CR-00054.)

[2] N.C. Gen. Stat. § 143-300.3 provides: "the State may provide for the defense of any civil or criminal action or proceeding brought against [a State employee] in his official or individual capacity[.]"

2

filed an answer on their behalf.  (Doc. 8.)  Several weeks later, Lusic withdrew, and Vigo's current counsel, Assistant Attorney General Bryan Nichols, entered an appearance.  (Doc. 21.) Discovery commenced, and eventually Patterson filed a motion for summary judgment, which the Magistrate Judge recommended be denied.  See Patterson v. Henderson, No. 1:19CV204, 2021 WL 3055038 (M.D.N.C. July 20, 2021).  On September 17, 2021, this court adopted that recommendation (Doc. 47), and the case was set for a jury trial on December 5, 2022.  (Doc. 48.)  Thereafter, the Magistrate Judge directed the Clerk of Court to seek pro bono counsel to represent Patterson at trial pursuant to this court's pro bono volunteer lawyer program.  (See Text Order dated March 9, 2022.)  On March 21, 2022, Patterson's counsel entered an appearance in this case.  (Docs. 49, 50.)

On November 23, 2022, less than two weeks before trial was scheduled to begin, Nichols moved to withdraw from representing Vigo.[3]  (Doc. 91.)  In that motion, Nichols indicated for the first time that neither he nor anyone in his office had been in contact with Vigo for a period of months, as Vigo had left the employ of Scotland Correctional and moved to the state of Washington.  (Id.) Nichols reported that he tried to contact Vigo "[o]n or around

---

[3] Nichols also sought to withdraw from representing Defendant Bustillos, but Bustillos later appeared at trial.

3

October 20, 2022," by sending a "letter to [his] last known address" that "asked him to contact our office immediately in preparation for the settlement conference and upcoming trial." (Id. ¶ 8.) Nichols also represented that he called Vigo's last known telephone number over five times only to have the person who answered report it was the wrong number. (Id. ¶ 9.)

On December 5, 2022, based on the information revealed in Nichols's motion to withdraw, Patterson moved for default judgment against Vigo as a discovery sanction under Rule 37 of the Federal Rules of Civil Procedure.[4] (Doc. 101 at 1.) In particular, Patterson contended that Nichols's representation in Vigo's responses that Vigo was "without sufficient information to admit or deny" certain requests for admissions was false because, as it was subsequently revealed, Nichols had never communicated with his client. (Doc. 102 at 6.) Nichols opposed the motion, responding that he had relied on information Vigo provided when he "initially requested to be represented by the Attorney General's office"; specifically, Nichols noted that Vigo "provided detailed information to our office about what happened during the incident, [his] role[] in the incident and explained how no excessive force was used." (Doc. 120 at 1.) Nichols also noted that he had spoken

---

[4] Patterson's motion also sought default judgment against Bustillos, who at that time had also failed to communicate with Nichols prior to the upcoming trial. (See Doc. 101.)

4

with other correctional officers who "were there with Defendant[] Vigo" and "explained what was being done in the shower area and the holding cell and could confirm and support was [sic] Defendants Vigo . . . outlined." (Id. at 2-3.)  Accordingly, Nichols contended, the responses to the request for admissions were not untrue for the simple reason that other correctional officers "verified what happened during the incident, including what Defendant[] Vigo . . . [was] doing." (Id. at 3.)

On January 13, 2023, shortly before trial was scheduled to begin,[5] the court denied Nichols's motion to withdraw and granted Patterson's motion for sanctions in part. As for the motion to withdraw, the court concluded that Nichols failed to comply with Local Rule 83.1(e)(3), which requires that any motion to withdraw be served on the client and include the client's mailing address in the certificate of service. (Doc. 122 at 6.)  The court also noted that counsel's withdrawal at that stage – less than two weeks

---

[5] The trial date was continued from December 5, 2022, because the Bureau of Prisons and U.S. Marshals Service were unable to transport Patterson to the district until December 15, 2022, at the earliest, though the court issued a writ weeks before. Accordingly, the court reset the trial for December 19, 2022. (Doc. 92.)  Shortly thereafter, however, Defendants moved for a slight delay because Defendant Bullard, who was available for the original trial setting, was scheduled to be out of the state (1,100 miles away) until December 29, 2022. (Doc. 99.)  To accommodate that development and to allow for a pretrial settlement conference that had been cancelled because of the Bureau of Prison's inability to timely transport Patterson to the district, the court granted Defendants' motion to continue the trial to the court's next available trial setting on January 17, 2023, which also permitted the court to set a settlement conference for January 3, 2023. (Doc. 103.)

5

before the scheduled trial date - would "disrupt the proceedings, harming both the Plaintiff and the administration of justice, by delaying resolution of the case." (Id. at 8.) Accordingly, the court directed counsel to be prepared to represent Vigo at trial. The court did grant Patterson's request for sanctions but only "to the extent that Defendant[] Vigo . . . be prohibited from offering evidence to rebut the factual allegations of those requests for admissions to which [he] responded [he] lacked sufficient information to respond." (Doc. 124 at 19.) The court specifically rejected the request for default judgment as being "too severe." (Id. at 18.)

Trial began on Tuesday, January 17, 2023. After the jury was selected, Nichols informed the court that over the weekend he finally spoke with Vigo, but that because Vigo was now living in the state of Washington, he could not travel to North Carolina in time for trial. Accordingly, Nichols moved for a short continuance, which the court denied given the extreme tardiness of the request. However, the court informed Nichols, without Patterson's objection, that Vigo could testify remotely so long as he was on camera and subject to cross-examination by Patterson. With that, the jury was impaneled, and Patterson began presenting evidence. Nichols appeared on behalf of Vigo and his three co-Defendants throughout the entirety of the trial.

At trial, Patterson conceded that he initiated the chain of

6

events giving rise to this lawsuit when, during the guards' lockdown search for a missing kitchen item, Patterson broke free of his restraints and attacked two Scotland Correctional officers in the Green Unit cellblock. Video of the incident, played for the jury, graphically confirmed this. Patterson also agreed that he was quickly subdued by several officers, who tackled him to the ground, pepper-sprayed him, and put him in handcuffs. But Patterson contended that when he was taken to the shower area, officers maliciously punched and kicked him, followed by further beatings in the receiving area, followed by beatings in the decontamination shower by Vigo and Bustillos. None of this was evident from the video; rather, Patterson contended this happened when he was out of the view of the correctional facility's surveillance cameras. At the close of Patterson's evidence, Defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). The court reserved ruling.

Defendants' evidence disputed Patterson's claims. Defendants Bullard and Henderson testified that Patterson was taken from area to area – first the shower area in Green Unit, then the receiving area holding cell, and finally the decontamination shower to remove the pepper spray – in compliance with Scotland Correctional protocol. Several officers who were present, including Vigo's partner Bustillos, testified that no one, including Vigo, ever used excessive force against Patterson during this time. Vigo,

7

who was given the opportunity to testify remotely, elected not to do so. The video evidence was played for the jury again.

At the close of all the evidence, Patterson moved for judgment as a matter of law. As to the claims against Vigo, Patterson cited his failure to appear at trial and requested that the court enter default against him. Vigo's counsel, Nichols, opposed the request. The court denied the motion.

During closing arguments, both Patterson and Defendants sought to use Vigo's absence to their advantage. Patterson, for his part, contended that Vigo's failure to appear at trial was part and parcel of his disregard for Patterson's civil rights: "Officer Vigo is not even here. Is this how we want officers to treat these situations?" In response, Nichols submitted that Vigo was absent for the simple reason he knew the lawsuit was frivolous: "Vigo moved to Washington state. He's not going to fly back for something like this. They [the Defendants] know they are innocent." The case was then submitted to the jury.

After deliberating for just over an hour, the jury returned a verdict in favor of all Defendants. (Docs. 129, 130.) After entry of judgment (Doc. 132), Patterson brought the present renewed motion for judgment as a matter of law against Vigo based on Vigo's failure to appear at trial. (Docs. 134, 135.) Vigo's counsel at the Attorney General's office did not file a response.

8

## II. ANALYSIS

Patterson cites both Rule 50(b) and Rule 55 of the Federal Rules of Civil Procedure as grounds for his motion for default judgment against Vigo.

Rule 50 provides that judgment may be entered against a party who has been fully heard on an issue during a jury trial if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]" Fed. R. Civ. P. 50(a) (motion for judgment as a matter of law), (b) (renewed motion for judgment as a matter of law). Rule 50(a)(2) first requires a party to make a motion challenging the sufficiency of the evidence prior to the case being submitted to the jury. See Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 396, 399 (2006). If the district court denies or defers ruling on the motion under Rule 50(a), the moving party can renew the motion under Rule 50(b) after the jury returns a verdict. A Rule 50(b) movant, however, can only reassert the same grounds for judgment as a matter of law that he first asserted in his pre-deliberation Rule 50(a) motion. See Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 501, n.1 (4th Cir. 2001).

"When a jury verdict has been returned, judgment as a matter of law may be granted only if, viewing the evidence in a light most favorable to the non-moving party (and in support of the jury's verdict) and drawing every legitimate inference in that

party's favor, the only conclusion a reasonable jury could have reached is one in favor of the moving party." Int'l Ground Transp. v. Mayor & City Council of Ocean City, MD, 475 F.3d 214, 218–19 (4th Cir. 2007); see Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co., 3 F.4th 605, 610 (4th Cir. 2021). Stated more simply, "[s]o long as there exists 'evidence upon which a jury could reasonably return a verdict for [the non-moving party],'" judgment as a matter of law will be denied. E.E.O.C. v. Consol Energy, Inc., 860 F.3d 131, 141 (4th Cir. 2017) (quoting Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998)). When the court reviews the trial record, "it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see also Finch v. Covil Corp., 388 F. Supp. 3d 593, 602 (M.D.N.C. 2019) (citing Cline, 144 F.3d at 301).

Patterson's motion does not challenge the sufficiency of the evidence supporting the jury's verdict in favor of Vigo. To be sure, the video evidence and Defendants' testimony supports the verdict; Patterson's claim rested on his credibility, which the jury seemingly rejected. Instead, Patterson contends that he is entitled to judgment as a matter of law, notwithstanding the jury's verdict, because Vigo failed to "defend" this lawsuit within the meaning of Rule 55 of the Federal Rules of Civil Procedure. (See Doc. 135 at 6 (stating that Vigo's "actions constitute a failure to defend the lawsuit under Rule 55(a)").) Rule 55, which governs

10

default judgments, provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Patterson argues that Vigo failed to "otherwise defend" within the meaning of this Rule because he "declined to participate in discovery, comply with this Court's October 26 Order [to provide responses to Patterson's request for admissions], communicate with his counsel, and appear at trial." (Doc. 135 at 1.) Accordingly, Patterson asks the court to set aside the jury's verdict and "enter a default judgment against Mr. Vigo for $10,000." (Id. at 10.)

For two independent reasons, Patterson's argument plainly fails. First, Patterson's motion to set aside the judgment conflates Rule 50 and Rule 55. Rule 55 governs entry of default and default judgment; it has little, if anything, to do with the sufficiency of evidence supporting a jury verdict because it is normally only available "when the adversary process has been halted because of an essentially unresponsive party." 10A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure, § 2681 (4th ed. 2016) ("Wright & Miller") (quoting H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970)). Rule 50, on the other hand, allows the moving party to "test[] the legal sufficiency of a claim, that is, assesses whether the claim should succeed or fail because the evidence

11

developed at trial was insufficient as a matter of law to sustain the claim." Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 155 (4th Cir. 2012); see Mountain Dudes v. Split Rock Holdings, Inc., 946 F.3d 1122, 1128 (10th Cir. 2019) ("Rule 50 of the Federal Rules of Civil Procedure provides the process for challenging the sufficiency of the evidence in a civil jury trial." (citation omitted)). Thus, "Rule 50 does not concern default at all but concerns judgment as a matter of law (JMOL) and specifically states that it applies once 'a party has been fully heard on an issue during a jury trial.'" Claiborne v. JP Morgan Chase Bank Nat'l Ass'n, No. 1:18-CV-5542-SDG-CCB, 2020 WL 7327998, at *10 (N.D. Ga. Feb. 14, 2020) (quoting Fed. R. Civ. P. 50(a)(1)), report and recommendation adopted, No. 118CV05542SDGCCB, 2020 WL 7327997 (N.D. Ga. Mar. 25, 2020).

Yet here, Patterson's argument does not turn on any insufficiency of the evidentiary basis for the jury's verdict. Rather, Patterson advances the novel legal argument – entirely apart from the evidence established at trial - that default is appropriate against a defendant who fails to personally appear at trial even though his counsel appears on his behalf. This argument fails under Rule 50 because it does not challenge the legal sufficiency of the evidence supporting the jury's verdict. Under Rule 50, a moving party "can only prevail if there is no legally sufficient evidentiary basis to find for the party[.]" Hertz v.

12

Woodbury Cnty., Iowa, 566 F.3d 775, 781 (8th Cir. 2009) (internal quotation marks omitted and emphasis added)(noting that any argument that a party raises under Rule 50 "is, in effect, a sufficiency-of-the-evidence challenge"); see Unitherm Food, 546 U.S. at 399 ("Federal Rule of Civil Procedure 50 sets forth the procedural requirements for challenging the sufficiency of the evidence in a civil jury trial[.]" (emphasis added)); Wiener v. AXA Equitable Life Ins. Co., 58 F.4th 774, 784 (4th Cir. 2023) ("When the loser of a jury trial challenges the verdict under Federal Rule of Civil Procedure 50(b), the question is whether a jury, viewing the evidence in the light most favorable to the winning party, could have properly reached the conclusion reached by this jury." (internal quotation marks, alterations, and citations omitted)).[6]

Second, Patterson's motion to set aside the verdict under Rule 55 similarly fails. Federal Rule of Civil Procedure 55 authorizes the entry of default judgment against a party that "has failed to plead or otherwise defend." See Fed. R. Civ. P. 55(a),

---

[6] Even if construed as some kind of challenge to the sufficiency of the evidence, it is plainly not the case (nor does Patterson argue) that a reasonable and fair-minded jury could only reach a verdict in Patterson's favor. See Avina v. United States, 681 F.3d 1127, 1130 (9th Cir. 2012) ("Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom . . . judgment as a matter of law in excessive force cases should be granted sparingly." (internal quotation marks and citation omitted)).

13

(b)(2). To the extent Patterson's argument is premised on Vigo's inadequate discovery responses, the court already denied his request for default before trial as being "too severe," opting instead to preclude Vigo from denying the requests for admissions that were the subject of the motion. (Doc. 124 at 18.)

More to the point and contrary to Patterson's argument, Vigo did not fail to "defend" this action within the meaning of Rule 55. After Patterson filed the complaint in this case, Vigo appeared through counsel,[7] who thereafter represented him every step of the way – filing an answer, responding to discovery requests, appearing at a settlement conference, making pre-trial motions, and eventually providing representation at trial.[8] That

---

[7] Shortly after Patterson filed suit, Vigo asked the North Carolina Attorney General's Office to represent him under N.C. Gen. Stat. § 143-300.3.1, which authorizes any "current or former employee of the State to request legal representation for the defense of any civil or criminal action brought him or her in an official or individual capacity." (Doc. 91-2 at 1.) Because Patterson's claim was based on acts that allegedly occurred in the scope of Vigo's employment with the State, the Attorney General's office agreed to represent him. (Id.)

[8] At the risk of stating the obvious, Nichols's representation of Vigo, not to mention Vigo's own absenteeism, was fraught with problems. (See Doc. 124 at 3-9.) But Nichols's most glaring error – the failure to comply with the court's previous order regarding Patterson's request for admissions - was already sanctioned under Rule 37. (See id. at 11-15.) And more importantly here, it does not constitute the type of contumacious and willful conduct that might warrant entering a default judgment notwithstanding a jury's contrary decision on the merits. See Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc., 872 F.2d 88, 92 (4th Cir. 1989) (the sanction of default judgment is reserved for "only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules"). Indeed, though the court earlier reserved ruling on possible sanctions against counsel (Doc. 124 at 19), the court determined after trial that no sanctions would be imposed.

14

Vigo did not himself attend trial or otherwise participate in or remain informed about the litigation is of no moment. See Weitz Co. LLC v. MacKenzie House, LLC, 665 F.3d 970, 978 (8th Cir. 2012) ("Choosing not to appear for trial . . . does not necessarily constitute the willful violation of court rules that places a defendant in default." (internal quotation marks and citation omitted)); In re Agriprocessors, Inc., No. ADV 10-09197, 2013 WL 5726577, at *2 (Bankr. N.D. Iowa Oct. 21, 2013) ("The simple failure to attend trial does not necessarily result in a default, default judgment, or even a ruling against a party who does not have the burden of proof." (citation omitted)); Wright & Miller, supra, § 2682 ("A defendant who has participated throughout the pretrial process and has filed a responsive pleading, placing the case at issue, has not conceded liability.")

It would also "make little sense to enter a default after a case has been decided on the merits and it is demonstrable [that defendant's failures] did not cause injury." Mommaerts v. Hartford Life & Acc. Ins. Co., 472 F.3d 967, 968 (7th Cir. 2007) (Easterbrook, J.). Indeed, if anything, Vigo's decision not to attend trial arguably strengthened Patterson's case. Notably, Patterson's counsel referenced Vigo's absence no fewer than four times during initial and rebuttal closing arguments. Vigo's absence also hampered Vigo from presenting his version of the evidence to the jury. Entering default judgment against Vigo in

15

these circumstances, after a jury has rejected Patterson's contentions, would run afoul of the "strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010). Here, Patterson's claims against Vigo were resolved on their merits, and therefore "[u]sing a default judgment to strip the winner of [his] rights . . . cannot be appropriate. It would be a pointless windfall." Mommaerts, 472 F.3d at 968–69.

Each of the cases Patterson relies on is readily distinguishable. (See Doc. 135 at 6-8.) Each case involved a defendant who failed to appear at trial in any form - either by themselves or through counsel. Patterson cites no case finding that a defendant failed to defend an action where he or she appeared at trial only through counsel. In Hoxworth v. Blinder, Robinson & Company, 980 F.2d 912, 920-21 (3d Cir. 1992), for example, defense counsel withdrew nearly four months before trial, and defendants subsequently declined to retain counsel despite the court's order to do so, apparently in a bad faith attempt to "manipulate[] the situation." Similarly, in Ringgold Corporation v. Worrall, 880 F.2d 1138, 1140-41 (9th Cir. 1989), the district court granted defense counsel's motion to withdraw nearly a month before trial, but the defendant thereafter "failed to retain new counsel or otherwise appear[]" at the pretrial conference or hearing on the

16

motion for default and default judgment. Notably, moreover, in neither Hoxworth nor Ringgold did a jury reject the plaintiff's claims on the merits; instead, in both cases, the district court held a hearing on a motion for default judgment, which neither the defendant nor his lawyer attended. See Hoxworth, 980 F.2d at 917; Ringgold, 880 F.2d at 1140.

One final word. The North Carolina Attorney General's office has exhibited repeated failures to file timely responses to motions and discovery throughout this case. The Assistant Attorney General assigned to this case explained during one hearing that his office was grossly understaffed. The court is aware that other cases pending in this district have suffered from similar neglect by the State. The Attorney General's office should hold itself to a higher standard of professional competence, and the court expects these deficiencies to be addressed.

## III. CONCLUSION

For the reasons stated, therefore,

IT IS ORDERED that Patterson's renewed motion for judgment as a matter of law is DENIED.

IT IS FURTHER ORDERED that a copy of this memorandum opinion and order be sent to the Honorable Josh Stein, Attorney General of North Carolina.

/s/   Thomas D. Schroeder
United States District Judge

April 18, 2023